UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------------------X
ANGEL LOPEZ,

                      Plaintiff,

     -against-

HUNTER KEYSTONE PETERBILT, L.P. individually and
d/b/a HUNTER TRUCK SALES; HUNTER KEYSTONE
PETERBILT, INC. individually and d/b/a HUNTER TRUCK
SALES; BRYAN WIBLE, individually;
CHERYL JOHNSON, individually; NANCY MYCKA,
individually; EDWARD ("ED") ADLER, individually;
and CARRIE GINOCCI, individually;

                    Defendants.
---------------------------------------------------------------------X

Civil Docket No:

**COMPLAINT**

PLAINTIFF DEMANDS A
TRIAL BY JURY

Plaintiff, ANGEL LOPEZ, as and for his Complaint against the above Defendants respectfully alleges upon information and belief as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), 42 U.S.C. §1981, and to remedy violations of the New Jersey Law Against Discrimination ("NJLAD"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being Discriminated against, Retaliated against, and terminated by his employer solely due to his race, color and national origin.

### JURISDICTION AND VENUE

2. This action involves a Question of Federal Law under 42 USC Section 1981 and Title VII of the Civil Rights Act of 1964. The Court also has supplemental jurisdiction over the State causes of action.

3. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the District of New Jersey, and the discriminatory actions occurred within the District of New Jersey. 28 U.S.C. §1391(b).

4. On or about January 11, 2017, Plaintiff filed charges with the Equal Employment Opportunity Commission (herein after the "EEOC") against Defendants as set forth herein.

5. On or about February 27, 2018, the EEOC issued Plaintiff a Right to Sue Letter.

6. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

## PARTIES

7. That at all times relevant hereto, the Plaintiff Angel Lopez is a Hispanic male, residing in Monmouth County in the State of New Jersey.

8. That at all times herein mentioned, Respondent HUNTER KEYSTONE PETERBILT, L.P. was and still is a foreign for-profit corporation organized and existing by virtue of the laws of the State of Delaware.

9. That at all times herein mentioned, Respondent HUNTER KEYSTONE PETERBILT, INC. was and still is a foreign for-profit corporation organized and existing by virtue of the laws of the State of Delaware.

10. At all times material, HUNTER KEYSTONE PETERBILT, L.P., and HUNTER KEYSTONE PETERBILT, INC. did and continues to do business as Hunter Truck Sales (hereinafter collectively referred to as Defendants and/or PETERBILT") at 524 Monmouth Road, Clarksboro, NJ 08562 (herein after that "New Jersey Location").

11. At all times material Defendant Bryan Wible (hereinafter referred to as Defendant and/or "WIBLE") was employed by Defendants PETERBILT as Manager of Sales.

12. At all times material Defendant WIBLE held supervisory authority over Plaintiff.

13. At all times material Defendant Cheryl Johnson (hereinafter identified as Defendant and/or "JOHNSON") was employed by Defendants PETERBILT as Finance Manager.

14. At all times material Defendant JOHNSON held supervisory authority over Plaintiff.

15. At all times material Defendant Edward ("Ed") Adler (hereinafter identified as Defendant and/or "ADLER") was employed by Defendants PETERBILT as General Manager.

16. At all times material Defendant ADLER held supervisory authority over Plaintiff.

17. At all times material Defendant Nancy Mycka (hereinafter identified as Defendant and/or "MYKA") was employed by Defendants PETERBILT as Manager of Human Resources.

18. At all times material Defendant MYKA held supervisory authority over Plaintiff.

19. At all times material Defendant Carrie Ginocci (hereinafter identified as Defendant and/or "GNOCCI") was employed by Defendants PETERBILT as Vice President of Human Resources.

20. At all times material Defendant GINOCCI held supervisory authority over Plaintiff.

21. At all times material Defendants PETERBILT were the joint and solo employers of Defendants WIBLE, JOHNSON, ADLER, MYCKA, and GINOCCI.

22. At all times material Defendants PETERBILT were Plaintiff's joint and solo employer.

## MATERIAL FACTS

23. On or around June 2010, Plaintiff began working for Defendants as a Sales Representative/Account Manager.

24. Throughout the course of Plaintiff's employment with Defendants, Plaintiff was subjected to numerous acts of race and color discrimination, retaliation and forced to endure a hostile work environment.

25. At all times material - frequently and throughout a weekly basis, Defendant WIBLE would throw Plaintiff's office material on the floor and slam doors on Plaintiff.

26. At all times material – on a daily basis, Defendant JOHNSON would demean and degrade Plaintiff's services to his current and potential customers in an effort to discourage them from working with Plaintiff.

27. At all times material Defendant JOHNSON sabotaged Plaintiff's commission by falsely advising Plaintiff's potential Hispanic and non-Hispanic customers that they were not qualified for financing.

28. At all times material Defendant JOHNSON sabotaged Plaintiff's commission by purposefully making pricing and financing errors to delay documents from being sent to Plaintiff so that Plaintiff could complete a sale.

29. In addition to the above, Defendants' employees and manager would intentionally interfere with Plaintiff's sales/commission by providing Plaintiff's Caucasian co-workers approval on lower unit numbers and thereby allowing the co-workers to more quickly broker a deal. Defendants' managers would give this approval despite knowing that Plaintiff was already in contact and negotiating deals with said customers.

30. Furthermore – in or around the fall of 2015, upon the resignation of one of Defendants' former managers – Joe Kelly (hereinafter identified as "Mr. Kelly"), Defendant WIBLE distributed all of Mr. Kelly's accounts to Plaintiff's Caucasian co-workers, Steve Murphy (hereinafter identified as "Mr. Murphy"); Paul Fenh (hereinafter identified as "Mr. Fenh"); and Chris Turk (hereinafter identified as "Mr. Turk").

31. At all times material, Defendants paid Plaintiff substantially less than his Caucasian co-workers with less experience despite the fact that Plaintiff not only had more experience but higher profit margins as well.

32. In or around February 2016, Defendant JOHNSON verbally insulted Plaintiff's daughter by calling her a Puta (Spanish slang which translates to "bitch" or "whore").

33. In addition and on a frequent basis, Defendant JOHNSON would refer to Plaintiff as Puta.

34. On or around April 29, 2016, Plaintiff emailed a grievance letter to Defendant MYCKA via email that detailed Defendants' hostile work environment.

35. On or around May 3, 2016, after receiving no follow up, Plaintiff again emailed Defendant MYCKA and requested her to acknowledge receipt of his grievance letter. Less than thirty minutes later, Defendant MYCKA forwarded Plaintiff a response stating in words and in substance, "Learn to spell. Spam!"

36. At no time did Defendant MYCKA investigate Plaintiff's complaint of unlawful discrimination.

37. At all times material, Defendants allowed the racially discriminatory and harassing practices to continue in the workplace.

38. In or around the middle of May 2016, in retaliation for the above complaint, Defendant ADLER contacted Plaintiff and directed him to get finger printed and sign Defendants' employee handbook. During that same conversation and despite the fact that Plaintiff did not conduct business in Pennsylvania, Defendant ADLER threatened the following in words and in substance, "failure to obtain a PA sales license would preclude you from selling trucks for the Hunter Organization."

39. On or around May 27, 2016, Plaintiff emailed Defendant ADLER and complained that the ongoing racial comments and retaliatory conduct by Defendants' employees against Plaintiff exasperated the already hostile work environment.

40. That afternoon, Plaintiff received an email from Defendant GINOCCI who informed Plaintiff in words and in substance that Defendant ADLER had informed him of Plaintiff's complaints of discrimination and Plaintiff's suggestions that Plaintiff would be seeking legal counsel.

41. Upon speaking with Defendant GINOCCI, Plaintiff clarified that he had not yet retained counsel but that he wanted to speak with Defendant GINOCCI to resolve the discriminatory issues he was facing at work.

42. Despite the above, in or around early June 2016, Defendant WIBLE continued to harass Plaintiff with racial epithets on a frequent basis – calling Plaintiff a "fucking spic bastard." At all times material, Plaintiff felt humiliated and embarrassed in response to the derogatory racial slurs.

43. On or around June 14, 2016, Plaintiff forwarded Defendant GINOCCI the same grievance letter he sent to Defendant MYCKA nearly two months earlier.

44. On or around June 15, 2016, Defendant GINOCCI informed Plaintiff that he spoke with Defendant MYCKA who did not have a record of Plaintiff's email.

45. On or around June 28, 2016, Defendant GINOCCI conducted an "interview" of Plaintiff which lasted nearly two hours. After speaking with Plaintiff alone – Defendant GINOCCI met with Plaintiff and Defendant ADLER to discuss Plaintiff's complaints.

46. Despite the meeting, Defendants continued to subject Plaintiff to a hostile work environment as Defendants continued their discriminatory practices in the workplace, such as, but not limited to, Defendant JOHNSON sabotaging Plaintiff's commission by falsely advising Plaintiff's potential Hispanic customers that they were not qualified for financing and Defendant WIBLE's use of racial slurs to address Plaintiff by calling him a "spic bastard."

47. Defendants failed to conduct a meaningful investigation of Plaintiff's complaints of unlawful discrimination.

48. On or around July 6, 2016, Plaintiff emailed Defendant ADLER and informed him in words and in substance that Defendants did not pay Plaintiff commission on a deal Plaintiff brokered.

49. In addition and in the same email - Plaintiff complained that Defendant WIBLE approved a lower unit price to a customer to undermine and interfere in Plaintiff potential sale. Plaintiff furthered

inquired as to why Plaintiff was the lowest paid salesman working for Defendants, even though Plaintiff had more experience and a higher profit-margin than sales associates who were paid more than Plaintiff.

50. On or around July 8, 2016, Defendant GINOCCI emailed Plaintiff stating in words and in substance that Defendant ADLER forwarded Plaintiff's July 6th email to Defendant GINOCCI's attention. Defendant GINOCCI further asked Plaintiff to provide her for an explanation of Plaintiff's concerns. which Plaintiff again presented her with at length.

51. On or around August 9, 2016, Defendant GINOCCI notified Plaintiff that she would be handling Plaintiff's disputed account and requested Plaintiff send her a position statement relating to the owed commission.

52. On or around August 12, 2016, Plaintiff again notified Defendant GINOCCI of Defendants' ongoing racial discriminatory conduct towards Plaintiff.

53. At no time did Defendants or Defendant GNOCCI conduct a meaningful investigation of Plaintiff's complaints of unlawful discrimination and as such Defendants continued their racially discriminatory and harassing practices in the workplace.

54. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

56. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

57. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

58. The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff.

59. Upon information and belief, the discrimination and retaliation will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

60. Plaintiff further claims constructive and/or actual discharge to the extent she is terminated from her position as a result of the retaliation and harassment.

**AS A FIRST CAUSE OF ACTION
UNDER FEDERAL LAW
<u>42 U.S.C. Section 1981</u>
<u>(Discrimination and Retaliation)</u>**

61. Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

62. 42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

63. Plaintiff, as a member of the Hispanic race, was discriminated against by Defendants because of his race as provided under 42 USC Section 1981 and has suffered damages as set forth herein. Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

## AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (NOT AGAINST INDIVIDUAL DEFENDANTS)

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Section 1981, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's national origin and race.

66. SEC. 2000e-2. *[Section 703]* states as follows:

(a) Employer practices

> It shall be an unlawful employment practice for an employer -
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

67. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race, color, and national origin.

## AS A THIRD CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
## (NOT AGAINST INDIVIDUAL DEFENDANTS)

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

70. Defendants retaliated against Plaintiff because he opposed Defendants' unlawful employment practices.

## AS A FOURTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## DISCRIMINATION

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. New Jersey's Law against Discrimination Section 10:5-12(a) sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: a) For an employer, because of race . . , color, national origin . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

73. The full statute reads as follows: **10:5-12. Unlawful employment practices, discrimination.**
    It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
    a.   For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual

orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; provided, however, it shall not be an unlawful employment practice to refuse to accept for employment an applicant who has received a notice of induction or orders to report for active duty in the armed forces; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment any person on the basis of sex in those certain circumstances where sex is a bona fide occupational qualification, reasonably necessary to the normal operation of the particular business or enterprise; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age; provided further that it shall not be an unlawful employment practice for a club exclusively social or fraternal to use club membership as a uniform qualification for employment, or for a religious association or organization to utilize religious affiliation as a uniform qualification in the employment of clergy, religious teachers or other employees engaged in the religious activities of the association or organization, or in following the tenets of its religion in establishing and utilizing criteria for employment of an employee; provided further, that it shall not be an unlawful employment practice to require the retirement of any employee who, for the two-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if that employee is entitled to an immediate non-forfeitable annual retirement benefit from a pension, profit sharing, savings or deferred retirement plan, or any combination of those plans, of the employer of that employee which equals in the aggregate at least $27,000.00; and provided further that an employer may restrict employment to citizens of the United States where such restriction is required by federal law or is otherwise necessary to protect the national interest.

74. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

75. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

## AS A FIFTH CAUSE OF ACTION FOR RETALIATION
## UNDER NEW JERSEY STATE LAW

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

78. Defendants violated this section as set forth herein.

79. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

### AS A SIXTH CAUSE OF ACTION
### UNDER NEW JERSEY STATE LAW
### AIDING AND ABETTING

80. Plaintiff, individually and on behalf of all persons similarly situated, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

81. New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination.  It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:  e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

82. Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

83. Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) et. Seq.

84. As such, Plaintiff has been damaged as set forth herein.

85. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  May 14, 2018
         Philadelphia, PA

**DEREK SMITH LAW GROUP, PLLC**

By: /s _____
Chloe E. Gartside, Esq.
1845 Walnut Street, Suite 1601
Philadelphia, Pennsylvania 19103
(215) 391-4790